UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

DANIEL MASARIK,

        Petitioner,

        v.                                                                       Case No. 11-C-0048

UNITED STATES OF AMERICA,

        Respondent.

---

ORDER DENYING IN PART DANIEL MASARIK'S 28 U.S.C. § 2255 MOTION, APPOINTING COUNSEL AND SETTING A SCHEDULING CONFERENCE

    This case comes before the court on Daniel Masarik's motion to vacate, set aside, and correct sentence pursuant to 28 U.S.C. § 2255. Masarik, a former Milwaukee Police Officer, challenges his November 29, 2007, judgment of conviction in connection with attacks on Frank Jude and Lovell Harris outside of a housewarming party for another Milwaukee police officer in the early morning hours of October 24, 2004. A jury found Masarik and two of his co-defendants, Jon Barlett and Andrew Spengler, guilty of violations of 18 U.S.C. §§ 241 and 242. This court sentenced Masarik to 120 months on count one and a consecutive 68 month sentence on count two, for a total term of 188 months imprisonment. Masarik's conviction was affirmed on direct appeal, *United States v. Bartlett*, 567 F.3d 901 (7th Cir. 2009), and the United States Supreme Court denied his petition for writ of certiorari on January 19, 2010. For the reasons set forth below, the court will be denying the § 2255 motion in part and appoint counsel to assist Masarik with his remaining claims.

BACKGROUND

Initially, Masarik was charged in Milwaukee County Circuit Court with substantial battery, Wis. Stat. § 940.19(2), and second degree recklessly endangering safety, Wis. Stat. § 941.30(2). *State of Wisconsin v. Masarik*, Case No. 2005-CF-1111. Ryan Lemke, Ryan Packard, and Michelle Grutza's testimony exculpated Masarik. Bartlett also testified and exculpated Masarik. All three defendants - Spengler, Masarik, and Bartlett - were acquitted. Masarik and his co-defendants were indicted in federal court on one count of conspiring to deprive individuals of their civil rights in violation of 18 U.S.C. § 241 and one count of depriving them of their rights in violation of 18 U.S.C. § 242. Lemke and Packard were added as co-defendants.

Prior to trial, Masarik gave notice of his intent to call an eyewitness identification expert. (Case No. 06-CR- 273; Doc. 52.) The government moved to exclude Masarik's expert, Dr. Otto Maclin, and provided the court with Dr. Maclin's prior state testimony on the topic of witness identifications. (Case No. 06-CR-273; Doc. 64.) The court heard argument during the final pretrial conference, and denied the motion citing problems with testing the expert's theory, the jury's ability to assess credibility, and the length of time it would add to the trial. (Case No. 06-CR-273; Doc. 239 at 44-46.)

On July 6, 2006, Lemke entered a guilty plea to a misdemeanor. The agreement provided that the indictment would be dismissed at sentencing, which was after the trial concluded. (Case No. 06-CR-273; Doc. 130.) Trial commenced three days after the plea. (Case No. 06-CR-273; Doc. 150.)

The same day that Lemke entered his plea, Masarik filed a motion to read into the trial record the prior state criminal trial testimony of Packard, Lemke and Bartlett, or,

alternatively, to sever his case from his co-defendants. (Case No. 06-CR-273; Doc. 133.) The court denied the requests finding the federal government did not have the chance to cross-examine Packard, Lemke and Bartlett during the state court trial. In addition, the court noted that there were a number of persons, other than Packard, Lemke and Bartlett present during the incident at issue and that Masarik was not suggesting that there was no one other than co-defendants who could testify as to whether he was present or involved in the attacks on Jude and Harris. Finally, the court was not persuaded that there were circumstantial guarantees of trustworthiness equivalent to those supporting the hearsay exceptions in Rules 803 and 804. (Case No. 06-CR-273; Doc. 141; Doc. 244 at 5-6.)

At trial, numerous witnesses testified regarding Masarik's interaction with Jude. Jill Kieselhorst, who attended Spengler's party, testified that she saw Spengler and Masarik talking with Jude. Kieselhorst acknowledged that in the earlier state court trial that she could not identify the man who was standing next to Spengler. (Case No. 06-CR-273; Doc. 222 at 544-51, 598-599.) Katie Brown testified that she saw Masarik kick Jude, but could not identify Masarik in a photo array after the incident. (Case No. 06-CR-273; Doc. 221 at 63, 65, 67, 81-85.) Mariah Gagnon did not see Masarik in the group surrounding the truck in which Jude was seated initially, but later saw Masarik kick Jude in the face. She testified that she yelled at the men to stop but Masarik approached her and told her to shut up. (Case No. 06-CR-273; Doc. 222 at 619-29.) However, she could not identify Masarik in the photo array conducted after the party. (*Id.* at 609.)

Lovell Harris testified that he saw Masarik and Packard in the group surrounding the truck in which he was seated and that he was pulled from the truck by Spengler, Bartlett and Masarik. (Case No. 06-CR-273; Doc. 221 at 202-205)("Masarik was standing right

3

there, I believe.") Similarly, Jon Clausing testified that he saw Spengler, Bartlett and Masarik questioning Jude. (Case No. 06-CR-273; Doc. 223 at 805-806.) Clausing observed Bartlett and another officer, whom he was "fairly certain" was Masarik but less certain than he was of Bartlett, take Jude to the ground. (Case No. 06-CR-273; Doc. 223, pp. 808-809, 887-88.) Clausing also saw Masarik standing at Jude's head but did not see him make physical contact with Jude. On cross-examination, Clausing admitted that he was unsure that it was Masarik who made physical contact with Jude and that it could have been Lemke because he was focusing more on Bartlett than the person on the other side. (*Id.* at 819-21, 888.)

Initially, Officer Schabel did not identify anyone but later informed the internal affairs interviewer that Masarik was on Jude's right side. (Case No. 06-CR-273; Doc. 227 at 1914-16.) At trial he testified that Masarik told him he had kicked Jude in the face. (Case No. 06-CR-273; Doc. 227 at 1891.)

Other witnesses were unequivocal in their identification. Jodie Kamermeyer testified that she saw Packard and Masarik, and that Masarik was on Jude's left side holding Jude's arm. (Case No. 06-CR-273; Doc. 222 at 448-51.) She further testified that she saw Masarik among those punching Jude. (Case No. 06-CR-273; Doc. 222 at 452-53.) Officer Nicole Martinez arrived on the scene at 3 a.m. and identified Spengler, Masarik, and Bartlett among the officers crowded around Jude. She saw Masarik kick Jude in the crotch after he apologized to her for having to witness it. (Case No. 06-CR-273; Doc. 224 at 1047-1057.)

In his defense, Masarik introduced photographs of himself and Lemke, as well as a side-by-side depiction, to show their resemblance. (Case No. 06-CR-273; Doc. 227, exs.

4

248-251.) He testified that, prior to the events at issue, he was in a bedroom on the phone with his wife. Cell phone records confirmed that the call began at 2:38 a.m. and lasted five minutes. Masarik's wife returned his call at 2:43 a.m. and that call ended at 2:48 a.m. (Case No. 06-CR-273; Doc. 227 at 1955-59.) Masarik talked to his friend, Rob Engle, and "vented" for several minutes before returning to the party. He saw Spengler on the porch and asked Spengler why everyone was leaving. Spengler told Masarik that his badge had been stolen and that he should check to make sure his police equipment was in the room. (*Id.* at 1960-62.)

Masarik testified that he went inside the house and it took several minutes to find his shirt with the badge pinned on it. He found everything but his black leather memo book. (*Id.* at 1963-64.) Outside he told Spengler that the memo book was missing. Spengler told him that he had placed Masarik's memo book in the desk so Masarik returned to the room to find it. Back outside, Masarik entered the street and witnessed officers lifting Jude from the ground. Sgt. Court told Masarik to "make the yards," which meant to search the property for the missing badge. (*Id.* at 1970-75.) Masarik testified that he did not see Brown, Antonissen, Jude or Harris. (*Id.* at 1973-74.) He further denied any physical contact with Jude. Later that day, Masarik requested overtime pay from 2:51 a.m. to 12:23 p.m. (*Id.* at 1977.)

During the trial, Lemke took the stand for Masarik and identified himself. He gave no other testimony. (Case No. 06-CR-273; Doc. 227 at 2066.) Grutza exercised her Fifth Amendment right not to testify when Masarik called her as a witness. (Case No. 06-CR-273; Doc. 233 at 1701.) However, the parties stipulated that "at some point on October

5

24, 2004, Ryan Lemke laid across the legs of Frank Jude and Ryan Lemke kicked Frank Jude in the thigh two times." (Case No. 06-CR-273; Doc. 227 at 1948.)

The jury deliberated from July 23 - 27, 2007, before finding Bartlett, Masarik, and Spengler guilty on both counts. (Case No. 06-CR-273; Docs. 159-161.) Packard was acquitted. (Case No. 06-CR-273; Doc. 162.) The court sentenced Masarik to 188 months on November 29, 2007, and judgment was entered January 15, 2008. (Case No. 06-CR-273; Docs. 195, 201.)

Masarik's appellate brief was due on November 19, 2008. On November 26, 2008, Attorney T. Christopher Kelly submitted a motion in the Court of Appeals for authorization to file appellant's brief instanter citing unexpected staff shortages, an illness, and printing delays. The Seventh Circuit granted the extension. On appeal, Attorney Kelly argued that the trial court violated Masarik's right to present a defense and abused its discretion in denying Masarik the opportunity to present expert testimony on eyewitness identification. Next, he argued that the district court violated Masarik's right to present a defense and due process right by precluding the admission of exculpatory testimony given by an unavailable witness who testified in an earlier trial and by denying his request for a severance. Attorney Kelly further argued that the evidence was insufficient to prove that the defendants agreed to deprive Jude of his civil rights. Finally, Attorney Kelly asserted that Masarik's sentence was unreasonable.

Attorney Kelly was temporarily suspended during the briefing on appeal. Consequently, Attorney Alan Habermehl filed a motion to file the appellant's reply brief instanter and the motion was granted.

The Seventh Circuit discussed four of the twelve appellate issues raised by Spengler, Bartlett, and Masarik, and rejected the remaining arguments without comment. *Bartlett,* 567 F.3d at 905. The Court of Appeals rejected the argument that there was insufficient evidence of a conspiracy, as well as Masarik's contention that he did not participate in beating the victims. The Seventh Circuit commented that six witnesses testified that Masarik held Jude while others punched and kicked him. Some of the witnesses testified that Masarik kicked Jude in the face at least twice, and that Masarik kicked Jude in the crotch. In response to Masarik's argument regarding the exclusion of expert testimony, the Seventh Circuit observed:

> The district judge did not abuse his discretion in this case, because the conviction does not rest on identifications by Jude and the other victims. Only two of the people who identified Masarik were strangers to him. The other four knew him well. The social-science studies do not suggest that people who have known one another for weeks or years are apt to err when identifying them in court. What's more, the scholarly work concerns identification by single eyewitnesses, not the probability of error when multiple witnesses identify the same person. If the six in-court identifications of Masarik were independent, and each had a probable error rate of .333 (that is, there is a one-in-three chance that any witness was mistaken), then the probability that Masarik is innocent is .333 to the sixth power, or well under 1%. We have remarked before that the scholarly findings about eyewitnesses have only limited application when multiple witnesses identify the same person. *See United States v. Williams*, 522 F.3d 809 (7th Cir. 2008); *Newsome v. McCabe*, 319 F.3d 301 (7th Cir. 2003). Masarik did not proffer any evidence about the error rates in six-fold identifications. Nor did he propose to ask an expert whether the six identifications should be regarded as independent, or what the risk of error in these identifications taken jointly is apt to be. Someone who proposes expert testimony must show how the findings apply to the litigation at hand; Masarik did not do this.

> A concurring opinion in *Hall* added that, although jurors should be made aware of the scholarly findings in appropriate cases, it is often better to have the judge summarize the state of knowledge than to have a parade of experts. 165 F.3d at 1120. Masarik did not ask the judge to recap the scholarly findings for jurors' benefit. For him, it was an expert on the stand

7

or it was nothing; the judge did not abuse his discretion in blocking that testimony in order to keep this trial on track.

*Id.* at 906. Finally, the Seventh Circuit addressed the defendants' arguments that the sentences were unreasonably high.

## ANAYLSIS

Section 2255 is an extraordinary remedy because a petitioner seeking § 2255 relief has already "had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Consequently, § 2255 relief "is appropriate only for 'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir.1991)). A petitioner may not use § 2255 to recapitulate or substitute for a direct appeal. *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012). For that reason, a petitioner is barred from raising constitutional issues in a § 2255 motion if those issues could have been challenged and decided on direct appeal unless a petitioner can show (1) "good cause for failing to raise the issue" and (2) "actual prejudice." *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002).

In his January 18, 2011, § 2255 motion, Masarik raises four arguments: (1) ineffective assistance of appellate counsel; (2) ineffective assistance of trial counsel; (3) error in the court's limiting instruction concerning the related prior state criminal proceedings; and (4) error in the court's failure to grant repeated motions for a mistrial. However, in his brief supporting the motion, filed on September 29, 2011, Masarik raises additional arguments, many of which appear under a section titled "jurisdiction." In

8

addition, the last seven pages of his brief include arguments regarding the denial of his severance motion, a violation of due process rights in the exclusion of exculpatory testimony, prosecutorial misconduct in connection with a *Brady* violation, and newly discovered evidence in the form of deposition testimony from Lemke, Spengler, and Engle given in subsequent civil litigation.

The court will first address the arguments falling under the section titled "jurisdiction." These arguments include a challenge to venue, references to the commerce clause, and a discussion of the right of a private citizen to make a citizen's arrest. Masarik also alleges that there was insufficient evidence to establish that he joined the conspiracy as required under § 241, and that the statute exceeds congressional authority by interfering with states' rights under the Fourteenth Amendment. Finally, he challenges the application of § 242 inasmuch as "under color of law" is vague.

The government did not address these arguments separately beyond a footnote regarding venue, but Masarik did not identify these claims in his § 2255 motion. The insufficiency of the evidence argument was raised on direct appeal. However, all remaining arguments are barred by the doctrine of procedural default. Also, because these arguments lack merit, Masarik cannot establish good cause for his default or actual prejudice.

For example, the indictment charged Masarik with violations of separate federal criminal civil rights statutes: 18 U.S.C. §§ 241 and 242. Count one charged each defendant with conspiring to violate the federal constitutional rights of Jude and Harris in violation of 18 U.S.C. § 241. Count two charged each defendant with violating 18 U.S.C.

§ 242 by assaulting Jude while acting under color of law, thereby depriving him of his right not to be subjected to an unreasonable seizure.

Venue was established because the offense was prosecuted in the district where the offense was committed. Fed. R. Crim. P. 18. Further, the authority for these statutes is found under the last clause of section 8 of Article I of the United States Constitution, which provides that Congress has the power to make all laws necessary and proper for exercising its powers under the Constitution. This clause grants Congress broad authority to enact federal legislation. *United States v. Comstock*, 560 U.S. 126, 130 S. Ct. 1949, 1956, 176 L. Ed. 2d 878 (2010). In addition, section 5 of the Fourteenth Amendment grants Congress the power to enforce the substantive guarantees contained in § 1 by enacting "appropriate legislation." *See City of Boerne v. Flores*, 521 U.S. 507, 536, 117 S. Ct. 2157, 138 L. Ed.2d 624 (1997). Because the right against unreasonable searches and seizures is found in the Fourth Amendment of the Constitution and is applicable to states under the due process clause of the Fourteenth Amendment, it follows that § 241 and § 242 are means that are rationally related to the implementation of a constitutionally enumerated power. *See Comstock*, 130 S. Ct. at 1956.

Neither the offenses charged nor the Constitution requires a showing of interstate commerce. Nor is the right of a citizen to make an arrest relevant to this case. The indictment charged Masarik with acting under the color of law. Case law supports the application of the Fourteenth Amendment and the record is replete with references to police officers at the scene stating that they were police officers, acting in their capacity as police officers, and conceding they were "on duty." Masarik even submitted a request for overtime pay as a Milwaukee police officer in association with the events of that morning.

10

Finding no merit to these arguments, the court turns to the four grounds raised in the motion.

Grounds three and four are asserted as independent grounds for relief but are also addressed within the context of the ineffective assistance claims raised in grounds one and two. Ground three charges that the court committed error by delivering its jury instruction regarding the earlier state court proceedings. Ground four contends that the court erred by denying five motions for a mistrial. These arguments were not raised on appeal; however, Masarik explains that they were not raised because "attorney Kelly was ineffective/suspended/disbarred." Consequently, the court will address grounds three and four within the context of Masarik's claims of ineffective assistance of counsel.

Masarik's arguments regarding appellate counsel, focuses on counsel's failure to raise certain arguments, appellate counsel's lack of communication with him regarding the direct appeal, and appellate counsel's suspension from the practice of law. The court notes that appellate counsel's license was subsequently revoked on March 23, 2012. *See In re Matter of Disciplinary Proceedings Against T. Kelly*, 341 Wis. 2d 104 (S. Ct. 2012).

Masarik states that he was unaware of any investigation or issues relating to his appellate counsel's mental health. Additionally, he identifies the following "errors" that appellate counsel failed to raise in his brief: (1) the admission of trial evidence regarding the state court proceedings; (2) the admission of co-defendant testimony from the state court proceedings; (3) the denial of his *Bruton* motion; (4) the denial of his motion for severance; (5) the denial of his motion for a bill of particulars regarding the government's theory of "color of law;" (6) the jury instruction regarding the state court proceedings; (7)

11

the jury instruction regarding the elements of the offense; (8) insufficient evidence that he acted "under the color of law;" and (9) the denial of five mistrial motions.

To show that his appellate counsel was ineffective, Masarik must prove that (1) the attorney's performance fell below an objective standard of reasonableness, and (2) he was prejudiced by the attorney's error. *Strickland v. Washington*, 466 U.S. 668, 687-92, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008). Masarik must overcome the presumption that counsel's performance was reasonable. *Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004). And, where Masarik argues that counsel overlooked a meritorious argument, the court must first examine the record to see whether the appellate attorney in fact omitted "significant and obvious" issues. *Suggs*, 513 F.3d at 678; *Martin*, 384 F.3d at 851-52. Next, the court compares the neglected issues to those actually raised; if the ignored issues were "clearly stronger" than those raised, appellate counsel was deficient. *Lee v. Davis*, 328 F.3d 896, 900-01 (7th Cir. 2003). The court will not second-guess strategic decisions that were arguably appropriate at the time but that hindsight has revealed to be unwise. *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir.1996). The prejudice prong requires a showing of "a reasonable probability" that the omitted claim "would have altered the outcome" of his direct appeal had it been raised. *See Lee*, 328 F.3d at 901.

A number of Masarik's arguments regarding ineffective assistance of appellate counsel require no more than a brief discussion. The oral motion for a mistrial was based on an alleged *Bruton* violation during the testimony of Shannon Nelsen, who was a passenger on a boat ride with Spengler during the summer of 2005. (Case No. 06-CR-

12

273 at 1294-1325.) Trial counsel raised Masarik's *Bruton* concerns prior to Nelsen's testimony regarding her conversation with Spengler. Moreover, the government acknowledged the potential issue and instructed Nelsen to refer to "others" rather than the defendants. (*Id.* at 1297-1299.) Attorney Cubie, counsel for Packard, moved for a mistrial and Masarik's counsel joined the request. (*Id.* at 1309-1310.) However, the court denied the motion because Nelson's testimony was permissible under *Bruton*:

> I will deny the motion for a mistrial. I do not believe the statement as the, as relayed by the witness implicates other defendants. The question that was asked was whether or not Mr. Spengler thought what he did was right. I do think that the form of the question needs to be altered and, therefore, I'm going to sustain the objection to that particular question. You may proceed with your examination.

(*Id.* at 1310.) Therefore, because Nelson's use of a neutral phrase did not implicate *Bruton*, this was not a "significant and obvious issue" that could have altered the outcome of the appeal.

Similarly, counsel's failure to challenge the denial of his motion for a bill of particulars was not a "significant or obvious issue." The Seventh Circuit reviews the district court's decision to deny a motion for a bill of particulars under a deferential standard and will reverse upon a showing that the court abused its discretion and that the defendant suffered prejudice as a result. *United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013). Bartlett, Masarik, and Packard moved for a bill of particulars setting forth the specific acts that these defendants alleged to have engaged in that demonstrated that they were acting "under color of law." (Case No. 06-CR-273; Docs. 58, 54, and 56.) The magistrate judge denied the motions following a proper recitation of the law noting that the indictment stated all of the elements of the offense charged, the approximate time and place of the conduct

13

that constituted the offense, and the citations to the statutes allegedly violated. Because the government complied with the open file policy giving each defendant full access to the evidence in the government's possession pursuant to Crim. L. R. 16.1., the necessity for a bill of particulars was diminished.

Although Packard filed an objection to the portion of the magistrate judge's order recommending that his motion to exclude state court testimony be denied, no one filed an appeal of the order denying the motions for a bill of particulars. Trial counsel filed the motion and there was no abuse of discretion in denying the motion; hence, appellate counsel's performance was not deficient in failing to raise this argument.

Masarik's arguments regarding appellate counsel's failure to challenge several jury instructions also fail. When evaluating an argument regarding jury instructions on appeal, the Seventh Circuit considers whether the instructions provided by the trial court were an accurate statement of the law and review is limited. *Jimenez v. City of Chicago*, 2013 WL 5524787 at *5 (7th Cir. 2013.) If the instructions were deficient, the Seventh Circuit asks whether the jury was confused or misled by the instructions, and, if so, whether the defendant was prejudiced. *Id.*

The jury was instructed as follows:

> You have heard that there was a prior state trial involving the events at issue in this case. You should not concern yourself with this fact. Your verdict must be based solely on the evidence in this trial in accordance with the Court's instructions, without regard to what may have occurred earlier.

(Case No. 06-CR-273; Doc. 149 at Instruction No. 39.) Masarik fails to cite any authority suggesting that the instruction was erroneous and the court is not aware of such authority. Therefore, the court further finds that the jury instruction properly informed the jury of the

14

applicable law and that appellate counsel was not deficient in failing to raise this argument on appeal.

The same analysis applies to Masarik's arguments regarding the substantive instructions for 18 U.S.C. §§ 241 and 242. On count one, the jury was provided with the statutes defining the offenses, and was instructed regarding the three elements of an offense under § 241 and the four elements of an offense under of § 242. Specifically, the jury was told that to establish a violation of § 241, the government must prove each of the following elements beyond a reasonable doubt: (1) a conspiracy existed – that is an agreement or mutual understanding involving two or more persons, (2) that the purpose of the conspiracy was to injure, oppress, threaten or intimidate Jude or Harris in the free exercise of his Fourth Amendment right not to be subjected to an unreasonable seizure, including the right to be free from unreasonable or excessive force by a person acting under color of law; and (3) the defendant knowingly and voluntarily joined the conspiracy. (Case No. 06-CR-273; Doc. 149 at Jury Instruction No. 21.); 18 U.S.C. § 241. On count two, the jury was instructed that it must find that the defendant: (1) acted under the color of law; (2) deprived Jude of his right not be subjected to an unreasonable seizure by means of unreasonable or excessive force; (3) acted willfully; and that the offense resulted in bodily injury to the victim. (*Id.* at Jury Instruction No. 29.); 18 U.S.C. § 242. Hence, the instructions given to the jury paralleled the statute, case law, and the Seventh Circuit's pattern jury instructions for 18 U.S.C. § 241 and 242. *See Federal Criminal Jury Instructions of the Seventh Circuit*, 18 U.S.C. § 241, at pp. 151, 156 (1999 ed.). Hence, counsel could not be ineffective in failing to raise this argument concerning the jury instructions.

15

Masarik also contended that counsel should have challenged the sufficiency of the evidence that defendants acted under color of law. The government charged and the jury was properly instructed that it must find that the defendant acted under color of law. (Case No. 06-CR-273; Doc. 1; Doc. 149 at Jury Instruction No. 29.) A person acts under color of law when he participates with a person acting under color of law whom he knows to be an officer, in commission of the unlawful acts charged in the indictment. (*Id.*)

There was sufficient evidence at trial to establish that Masarik and other defendants asserted their authority as police officers notwithstanding that the events occurred at a house party when they were not in uniform. Witnesses testified that the defendants referred to themselves as police officers and that they regarded themselves as being on duty as police officers on the morning of October 24, 2004.

Katie Brown testified that Spengler kept asking about the location of a missing police badge, told Jude, Harris, Kirsten Antonissen and her that he was a cop, and ordered them out of Antonissen's truck. (Case No. 06-CR-273; Doc. 221 at 67.) Similarly, Kirsten Antonnisen recalled being told by defendants not to call the police because "we are the police." (Case No. 06-CR-273; Doc. 231 at 89.) Both victims, Harris and Jude, testified similarly that the defendants identified themselves as police officers. (*Id.*, at 206; Doc. 224 at 158.) The jury heard additional testimony that the officers considered themselves on duty. In a sworn statement of co-defendant John Bartlett, read by government witness Aaron Weiss, Bartlett stated it was his opinion that there were others there that were off duty that had placed themselves on duty because it's just a matter of taking police action. (Case No. 06-CR-273, Doc. 222 at 93, 94.) Further, Jon Clausing testified that people at the scene were identifying themselves as police officers. (Case No. 06-CR-273, Doc. 223

at 103.) Moreover, Masarik sought overtime in connection with the events at issue related to the party.

Finally, motions for mistrial are reviewed under the abuse of discretion standard. *United States v. Smith*, 308 F.3d 726, 739 (7th Cir. 2002). Three of the motions for mistrial resulted in a curative or limiting instruction. Masarik moved for a mistrial after Jodie Kamermayer was asked if she knew why individuals were holding Jude's arms. She responded "I don't know. You would have to ask the defendants." (Case No. 06-CR-273; Doc. 222 at 512.) Counsel argued that it was improper to suggest that the question be posed to defendants when no defendant is compelled to testify. The court denied the motion and provided the following instruction:

> No defendant has an obligation to offer any testimony or to testify in this case or in any criminal case. So any comments to the effect that you'll have to ask them should not be considered because no defendant has any obligation to offer one scintilla of information during a criminal trial.

(*Id.* at 513-514.)

Later, Masarik's trial counsel moved to limit the government's cross-examination of Joseph Schabel, who was called by Bartlett. Counsel argued that he would move for a mistrial if the court did not limit the government on cross to the scope of Schabel's testimony on direct. Schabel was not limited to his testimony on direct because he did not testify regarding Masarik on direct. The court limited the government to asking questions of the witness as if he had been called on direct. (Case No. 06-CR-273; Doc. 227 at 1883-1889.) Additionally, the jury was instructed and the testimony proceeded consistent with the court's instructions, defense counsel's objections were sustained, and no one moved for a mistrial. (*Id.* at 1885-1900.)

17

During closing arguments, all five defendants moved for mistrial after the government in its rebuttal asked the jury to "return a verdict of justice for Frank Jude." (Case No. 06-CR-273; Doc. 234 at 226.) The court ruled as follows:

> The request for a mistrial is denied for a number of reasons, but let me cite a few. First, the government's rebuttal included statements by Mr. Biskupic to the effect that this case is about the evidence. This case is about the real human beings that were involved. Frank Jude is worthy of the protections of the federal civil rights laws. There is nothing in those statements that's improper. Now, while it might be suggested that justice for Jude as used in Mr. Biskupic's argument might be an appeal to passion in and of itself, it is not, for every person who claims to be a victim is entitled to justice. The people of the United States are entitled to justice, but only to the extent the government proves its case beyond a reasonable doubt based solely on the evidence and without regard to bias, prejudice, fear or public opinion. The Court believes that no corrective instruction is required. However, to make absolutely clear to this jury that it must base its verdict solely on the evidence without regard to any passion, I will comment to the jury before it is, it retires to deliberate with respect to that subject.

(*Id.* at 230.)

The final two motions for a mistrial did not involve Masarik: (1) Spengler's motion alleging a *Garrity* violation in reference to a statement attributed to Spengler that was withdrawn; and (2) the alleged *Bruton* violation regarding testimony that did not implicate Masarik. (Case No. 06-CR-273; Doc. 221 at 3-4; Doc. 232 at 1310.) Inasmuch as Masarik has failed to present a justiciable bases for concluding that the court abused its discretion in denying these motions, appellate counsel was not ineffective in raising these arguments.

With respect to trial counsel's performance, Masarik contends that counsel failed to file reply briefs supporting the motions for a bill of particulars and *Brady* material. However, counsel clearly presented Masarik's arguments in support of the initial motion and the court has no reason to now find that a reply brief would have not altered the rulings on those motions. The magistrate judge clearly articulated his reasons for denying the

18

motion for a bill of particulars, and the government agreed to provide all *Brady* material. Also, the record establishes that the government complied with its obligation.

While Masarik takes issue with counsel's failure to file a *Bruton* motion, he fails to identify any alleged violation that has not been addressed. Finally, trial counsel was not ineffective in failing to file a motion for the dismissal of each count. However, the Seventh Circuit found sufficient evidence to support the conviction. With no basis for the motion, counsel was not deficient in failing to make the argument.

Nevertheless, it is prudent to revisit Masarik's motion for appointment of counsel with respect to his remaining claims. "A section 2255 proceeding is an independent civil suit for which there is no constitutional right to appointment of counsel." *Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir.1992). However, under 18 U.S.C. § 3006A(a)(2), the district court may appoint counsel for a § 2255 petitioner if "the interests of justice so require." Consequently, the interests of justice require that counsel review with Masarik his claims regarding appellate counsel's representation and his suspension from the practice of law while the appeal was pending as well as the record regarding the prior state testimony that did or did not come into evidence. Appointed counsel should also review with Masarik his claims regarding "newly discovered" evidence in the form of deposition testimony from a subsequent civil trial and trial counsel's alleged failure to inform Masarik of the existence of a statement made by Bartlett on or about September 29, 2006.[1] Now, therefore,

---

[1] It is clear from the record that Masarik's counsel filed a *Brady* motion seeking statements of codefendants which would reflect non-involvement by Masarik. The government responded that it would comply and provided a disc containing discovery materials bate stamped 010717-010723. Bartlett's statement that Masarik was not involved in the attack on Jude was included in the redacted statement.

IT IS ORDERED that grounds three and four of Masarik's motion pursuant to § 2255 are dismissed.

IT IS FURTHER ORDERED that Masarik's ineffective assistance of appellate and trial counsel claims are dismissed with the exception of those claims regarding counsel's suspension and the admissibility of prior state court testimony.

IT IS FURTHER ORDERED that counsel is appointed to represent Masarik in district court proceedings pursuant to 18 U.S.C. § 3006A, provided that Masarik qualifies financially.

IT IS FURTHER ORDERED that counsel appear for a scheduling conference on January 7, 2014, at 2:30 PM in Courtroom 222, U.S. Courthouse, 517 E. Wisconsin Avenue, Milwaukee, Wisconsin, to discuss further briefing and whether an evidentiary hearing is required.

Dated at Milwaukee, Wisconsin, this 4th day of December, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE