UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

DANIEL MASARIK,

        Petitioner,

        v.                                    Case No. 11-C-0048

UNITED STATES OF AMERICA,

        Respondent.

ORDER DENYING MASARIK'S 28 U.S.C. § 2255 MOTION, DISMISSING CASE, AND GRANTING CERTIFICATE OF APPEALABILITY

After denying in part Daniel Masarik's motion pursuant to 28 U.S.C. § 2255 and appointing counsel, this court allowed the parties to brief Masarik's claims of ineffective assistance of appellate and trial counsel regarding his attorney's suspension as well as the admissibility of prior state court testimony. (Doc. 28.) Nevertheless, the following issues were raised: (1) whether appellate counsel abandoned Masarik's appeal; (2) whether trial counsel was ineffective for failing to review certain *Brady* evidence and use it as a basis for a motion in limine; and (3) whether deposition testimony from a subsequent civil matter constitutes newly discovered evidence that provides a basis for relief. For the reasons set forth below, the court will deny the motion but grant a certificate of appealability.

Relief under § 2255 is extraordinary. *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). Under § 2255, relief "is available when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum allowed by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008)(*quoting* 28

U.S.C. § 2255). A § 2255 motion is not a substitute for a direct criminal appeal or a means to appeal identical claims a second time. *See Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). As such, if a petitioner does not raise a claim on direct appeal, that claim is barred from collateral review unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal. *See Sandoval v. United States*, 574 F.3d 847, 850–51 (7th Cir. 2009); *Torzala*, 545 F.3d at 522.

Because claims of ineffective assistance of counsel usually involve evidence outside of the trial record, such claims may be brought for the first time in a § 2255 motion. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). However, a petitioner bears a heavy burden to establish ineffective assistance of counsel. *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). These claims are evaluated under the two-prong *Strickland* test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007)(*citing Strickland v. Washington*, 466 U.S. 688, 690, 694 (1984)). Petitioner must establish that (1) counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the petitioner in such a way that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 688, 695. "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014) (citation omitted). Failure to establish either prong of the *Strickland* test is fatal to the claim. *See id.* at 697

("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant").

Masarik first argues that he was abandoned during the appeal process. Appellate Counsel, T. Christopher Kelly, moved to file his opening brief instanter in the Seventh Circuit Court of Appeals twelve days after its due date. Then, before the reply brief was due on April 17, 2009, Kelly was suspended from the practice of law for failing to comply with an Office Lawyer Regulation ("OLR") investigation. Additionally, Kelly was in the middle of divorce proceedings during the pendency of the appeal. Kelly's associate, Alan Habermehl, was substituted as counsel of record for Masarik on April 6, 2009, and he requested leave to file the reply brief instanter. In support of his late filing, Habermehl cited his unfamiliarity with the case and the complexity of the issues. According to Masarik, Kelly left him in a worse legal position by starting the appellate process and not finishing it than if he had never started it all because had Kelly done nothing Masarik would have been entitled to relief under *Strickland, Castellanos v. United States,* 2 F.3d 717 (7th Cir. 1994)*,* and *United States v. Cronic,* 466 U.S. 648 (1984).

This is not a case where Masarik instructed his lawyer to file a notice of appeal and the failure to do so deprived Masarik of his Sixth Amendment right to counsel. *Castellanos*, 26 F.3d at 718. Masarik was never without legal assistance and never lost his opportunity to appeal. Attorney Kelly filed a 79-page appellate brief addressing four issues: (1) whether the district court violated Masarik's right to present a defense and abused its discretion by denying Masarik the opportunity to present expert testimony on eye witness identification; (2) whether the district court violated Masarik's right to present a defense and right to due process by precluding the admission of exculpatory testimony given by

unavailable witnesses who testified in an earlier trial and by denying his alternative request for a severance; (3) whether the evidence was insufficient to prove that Masarik and his codefendants agreed to deprive Frank Jude, the alleged victim, of his civil rights; and (4) whether Masarik's sentence was unreasonable.

On April 2, 2009, Masarik was notified of Kelly's suspension by Kelly's law partner, Attorney Habermehl. (Doc. 1, Ex. 1.) The letter stated as follows:

> I am writing to inform you that your attorney, T. Christopher Kelly, is on leave from our firm, pending resolution of a temporary suspension of his license to practice law. As a result of this temporary suspension, Mr. Kelly is not currently able to act as your attorney in this matter. You are free to seek legal advice or representation in this matter elsewhere. However, our firm remains committed to representing you in this matter and will be happy to do so through the remainder of your case. As the senior criminal defense attorney in our firm, I will be responsible for Mr. Kelly's files during his absence. If you have any questions or concerns regarding this situation, please do not hesitate to contact me, and I will [sic] happy to discuss this further with you.

(Doc. 1, Ex. 1.) That same day, Habermehl copied Masarik on a letter filed with the Seventh Circuit informing the court that Kelly's law license had been temporarily suspended but the firm of Kelly, Habermehl and Bushaw would continue to represent him in the interim. (www.cir7.dcn/fdocs/docs.fwx, last visited on March 12, 2015.) After being substituted as counsel of record on April 6, 2009, Habermehl requested an extension, and filed a 22-page reply brief rebutting the government's response. Habermehl also appeared on Masarik's behalf at the May 15, 2009, oral argument. The Seventh Circuit issued its decision on June 8, 2009, and the mandate issued on June 30, 2009. The United States Supreme Court denied the petition for writ of certiorari on January 25, 2010. *United States v. Bartlett*, 567 F.3d 901 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1137 (2010).

On May 23, 2012, the Wisconsin Supreme Court issued its decision finding that Attorney Kelly's failure to appear or participate in the disciplinary proceedings constituted egregious conduct that merited the striking of his answer and proceeding on the allegations of the OLR's complaint, and that the revocation of his license was warranted. *In the Matter of Disciplinary Proceedings against T. Christopher Kelly,* 341 Wis. 2d 104 (2012). The OLR found 51 counts of misconduct, including ten counts of Attorney Kelly's failure to communicate with the client or client's family and seven instances of failing to return all or a portion of the advance fees. The government represents that Masarik was not one of the twelve criminal defendants described in the complaint filed against Kelly by the OLR. Moreover, Kelly did not represent Masarik during the criminal trial but was hired to handle the appeal.

Masarik's concerns about the timeliness of his appellate filings does not give rise to a finding of abandonment. The court is unaware of any case law supporting a theory that counsel is ineffective when he seeks leave and is granted the right to file a tardy brief. Further, the time constraints imposed on Habermehl did not render him ineffective. Masarik does not challenge the quality of Habermehl's reply brief, which was necessarily limited to matters first raised by Kelly. Although Masarik identified a number of issues in his § 2255 motion that he believes should have been raised by Kelly, those issues have been dismissed by previous order of the court as lacking merit or will be dismissed below. Therefore, Masarik has not satisfied the court that he was abandoned within the meaning of *Castellanos* or otherwise deprived of the effective of assistance of counsel as required by *Strickland*.

Next, Masarik argues that even if Kelly did not abandon him on appeal, Kelly was ineffective in failing to raise the government's *Brady* violation because the evidence would have been essential to his defense. At all times Masarik's defense was based on a theory of mistaken identity. He attempted to admit into evidence prior state court testimony of codefendants Ryan Packard, Ryan Lemke, and Jon Bartlett that was exculpatory for him.[1] Each had testified in state court that they had physical contact with Jude but none of them saw Masarik in Jude's immediate vicinity. However, Masarik's motion was denied by this court on July 9, 2007, because the government did not have an opportunity to cross-examine the witnesses and there was no guarantee of trustworthiness regarding the earlier testimony equivalent to those supporting the hearsay exceptions in Rules 803 and 804. (Case No. 06-CR-273, Doc. 141.)

Further, Masarik's counsel was "inadvertently allowed admission into a debriefing room wherein law enforcement agents, at least one member of the U.S. Attorney's Office, defense counsel for co-defendant Jon Bartlett and Jon Bartlett were meeting in what appeared [ ] to be a debriefing of Jon Bartlett and/or other negotiations and discussion." (Kohn Aff. 1/4/11.) Consequently, counsel filed a motion for disclosure of *Brady* material stating that "upon information and belief, one or more of the alleged co-conspirators, indicted or unindicted, named or unnamed, or one or more witnesses, provided a statement or statements to the government and/or its agent(s), pursuant to proffer agreement or otherwise, concerning the lack of involvement by Defendant Masarik."

---

[1] Masarik, Bartlett, and Spengler were acquitted in the state court. The federal indictment charged these same defendants with Lemke and Packard.

(Case No. 06-CR-273, Doc. 49.) Magistrate Judge William E. Callahan ruled that the motion was moot after the government acknowledged its duty to disclose such material.

The government maintains that the *Brady* violation never occurred because it has a record demonstrating that any exculpatory portion of Bartlett's statement was turned over to trial counsel. (Doc. 20 at 17-18; R. 23.) Attachment A is a May 4, 2007, letter to counsel from the United States Attorney's Office enclosing a CD containing additional discovery and John Doe transcripts. (Doc. 20, Att. A.). Attachment B is an October 3, 2006, statement by Bartlett to an Assistant United States Attorney and an FBI agent stating that Masarik was never around Jude and played no part in what happened to him. (Doc. 20, Att. B). In his statement Bartlett indicated that Masarik was not around when others were trying to handcuff Jude, and Att. 1 is the redacted version of that statement containing the language about Masarik. (Doc. 20, Att. 1). Hence, it does not appear that there was a *Brady* violation.

Assuming for the sake of argument that the government failed to produce the disk or that trial counsel failed to review the disk, Masarik cannot establish that appellate counsel was ineffective in failing to raise the issue on appeal. Masarik maintains that the statement, which inculpates Bartlett while exculpating Masarik, would have bolstered his claims on appeal and provided the court with a basis for allowing his identification expert to testify about whether the recollection of Bartlett or others was accurate. In addition, it would have contradicted the testimony of Katie Brown, Jodi Kamermayer, Mariah Gagnon, and Nicole Martinez, as well as that of codefendants Jon Clausing and Joseph Schabel, who cooperated with the government.

The problem with Masarik's arguments is his assumption that Bartlett's statement set out in an FBI form 302 was admissible. However, Bartlett did not testify at trial, and without his testimony the statement was inadmissible hearsay and, therefore, insignificant to the appeal. Ultimately, six witnesses testified that Masarik held Jude while others punched and kicked him, some of the witnesses saw Masarik kick Jude in the face at least twice and that Masarik kicked Jude in the crotch after apologizing to witness Nicole Martinez. *Bartlett*, 567 F.3d at 906.

Alternatively, Masarik submits that the post-trial deposition testimony of codefendants Ryan Lemke and Andrew Spengler, and witness Robert Engle in connection with a related civil action constitutes newly discovered evidence inasmuch as all three witnesses exculpate him. To circumvent the requirement under § 2255 that the newly discovered evidence demonstrates that Masarik's conviction was in violation of the constitution or the laws of the United States, Masarik urges the court to consider the issue as a motion for new trial based on newly discovered evidence. *See* 28 U.S.C. § 2255; Fed. R. Crim. P. 33. Simply asserting that the newly discovered evidence would probably lead to an acquittal in the event of a retrial does not suffice as a claim under § 2255 that the conviction or sentence was in violation of the Constitution or laws.

In any event, Masarik readily acknowledges an obstacle to his argument. As stated in his opening brief, "the Seventh Circuit has determined that generally the type of evidence Masarik relied upon is not newly discovered evidence." (Doc. 37 at 16, citing *United States v. Theodosopoulos*, 48 F.3d 1438, 1448-49 (7th Cir. 1995).) Relying on a First Circuit Court of Appeals decision, Masarik urges the court to draw a distinction between evidence which a defendant could not present because he did not know of it and

evidence he could not present because the witness was unavailable despite exercising due diligence. *United States v. Montilla-Rivera*, 115 F.3d 1060 (1st Cir. 1997). To that end, he contends that the "Seventh Circuit's supposed categorical ban on exculpatory statements made by codefendants who do not testify at trial is precisely the kind of judicially created rule that is arbitrary and disproportionate to the purposes it is designed to serve." (Doc. 37, p. 18.)

This argument fails for a myriad of reasons. First, under § 2255, Masarik cannot establish that the post-trial deposition testimony of his codefendants renders his conviction and sentence unconstitutional or otherwise subject to collateral attack. Second, a Rule 33(b)(1) motion must be filed within three years after the verdict or a finding of guilty. Fed. R. Crim. P. 33(b)(1). In Masarik's criminal case, the jury returned its verdict on July 26, 2007. Any motion should have been brought by July 26, 2010, and the present motion was filed on January 18, 2011. Third, the testimony does not constitute newly discovered evidence in this circuit.

To justify a new trial based on newly discovered evidence, Masarik must satisfy a stringent multi-stage test. *Theodosopoulos*, 48 F.3d at 1448. He must show that the evidence: (1) came to his knowledge only after trial; (2) could not have been discovered sooner through the exercise of due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a new trial. *Id.* Here, Masarik knew the testimony of these individuals prior to trial. Similar testimony was either available or could have been discovered prior to trial had they been interviewed. For example, Engle was interviewed with respect to the federal case, and testified in the state trial. His statements, including the January 4, 2005, supplementary report prepared by the

9

Milwaukee Police Department stating that Masarik was walking back and forth on the porch and inside the residence, were available to the defense prior to trial, and the defense chose not to call him as a witness. Therefore, the July 12, 2010, deposition testimony in the civil suit cannot be considered newly discovered evidence.

Lemke and Spengler exercised their rights against self-incrimination, and Lemke's earlier statement was consistent with his subsequent civil deposition on December 9, 2008. This circuit has held that post-trial statements by codefendants who exercised their Fifth Amendment right against self-incrimination to avoid testifying during trial does not qualify as newly discovered evidence because the defendant knew of the substance of the testimony during trial. *Theodosopoulos*, 48 F.3d at 1448. The rationale for this policy has been explained by the Third Circuit Court of Appeals as follows:

> Courts generally consider exculpatory testimony offered by codefendants after they have been sentenced to be inherently suspect. Indeed, "a court must exercise great caution in considering evidence to be 'newly discovered' when it existed all along and was unavailable only because a co-defendant, since convicted, had availed himself of his privilege not to testify." The rationale for casting a skeptical eye on such exculpatory testimony is manifest. It would encourage perjury to allow a new trial once co-defendants have determined that testifying is no longer harmful to themselves. They may say whatever they think might help their co-defendant, even to the point of pinning all the guilt on themselves, knowing they are safe from retrial. Such testimony would be untrustworthy and should not be encouraged.

*United States v. Jasin*, 280 F.3d 355, 365 (3d Cir. 2002) (internal quotations marks and citations omitted). Indeed the First Circuit Court of Appeals has since distinguished the *Montilla-Rivera* decision citing these same concerns. In *United States v. Del-Valle*, the First Circuit emphasized that such evidence must be regarded with "great skepticism" since "[i]t's not unusual for the obviously guilty codefendant to try to assume the entire guilt" and "[a] convicted, sentenced codefendant has little to lose (and perhaps something to gain)

10

from such testimony." 566 F.3d 31, 39 (1st Cir. 2009)(*quoting Montilla-Rivera,* 115 F.3d at 1066.) While some jurists may dispute the fairness of applying a wholesale ban on such testimony, it is the law of the circuit and binding precedent for this court.

As a final matter, Masarik argues that the court should construe his motion as a writ of audita querela and vacate his conviction. While this is a common law procedure of obtaining relief from a judgment, the Seventh Circuit has stated that its research "failed to discover any criminal case in which this writ has ever been asked for, let alone issued; it appears to be primarily a remedy of judgment debtors. *United States v. Kimberlin*, 675 F.2d 866, 869 (7th Cir. 1982). In *Melton v. United States*, 359 F.3d 855, 856 (7th Cir. 2004), the Seventh Circuit stated unequivocally that the "ancient writ of audita querela, long ago abolished in federal civil proceedings, see Fed. R. Civ. P. 60(b), has no apparent relevance to criminal sentences." In fact, the Seventh Circuit quoted *Black's Law Dictionary* 126 (7th ed. 1999), describing it as a "writ available to a judgment debtor who seeks a hearing on a matter on grounds of newly discovered evidence of newly existing legal defenses." *Id.* Because Masarik is not a judgment debtor and "the territory for new facts and law is occupied" by Rule 33 and § 2255, Masarik is not entitled to a writ of audita querela.

Because this court has determined that Masarik has failed to establish entitlement to relief in this action this court must also consider whether to grant a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable

jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed.2d 542 (2000). Therefore, the court concludes that it should grant a certificate of appealability with respect to Masarik's claim that counsel was ineffective in failing to raise the *Brady* issue on appeal and whether post-trial deposition testimony can ever be considered newly discovered evidence where the witnesses who would have testified that he was not involved in the beating of Frank Jude and asserted their rights under the Fifth Amendment. Now, therefore,

IT IS ORDERED that Daniel Masarik's motion pursuant to 28 U.S.C. § 2255 is denied.

IT IS FURTHER ORDERED that a certificate of appealability is granted with respect to the *Brady* issue and the argument that subsequent codefendant testimony in connection with a civil trial constitutes newly discovered evidence.

Dated at Milwaukee, Wisconsin, this 19th day of March, 2015.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE